**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JEROME LAWRENCE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 21-cv-1375 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| COOK COUNTY SHERIFF | ) | |
| TOM DART, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Jerome Lawrence, a pretrial detainee at the Cook County Jail, had a bad toothache. He had a large cavity that caused significant pain and made it hard to eat. Over the course of nine months, Lawrence submitted more than a dozen requests for medical treatment. One dentist, Dr. Brenda Taylor, saw him, but apparently didn't do much. Eventually, a second dentist extracted the tooth.

Lawrence ultimately sued Taylor, plus Sheriff Thomas Dart and Cook County. He alleges that they provided inadequate medical care. He blames Taylor for performing a half-hearted medical exam. And he blames the Sheriff and Cook County for using an inadequate system to schedule urgent dental appointments.

Defendants moved for a more definite statement or, in the alternative, to dismiss the claim against Taylor. They also moved to dismiss the counts against Sheriff Dart and Cook County, with prejudice.

For the following reasons, Defendants' motion is denied.

## Background

At the motion to dismiss stage, the Court must accept as true the well-pleaded allegations of the complaint.  *See Lett v. City of Chicago*, 946 F.3d 398, 399 (7th Cir. 2020).  The Court "offer[s] no opinion on the ultimate merits because further development of the record may cast the facts in a light different from the complaint."  *Savory v. Cannon*, 947 F.3d 409, 412 (7th Cir. 2020).

Plaintiff Jerome Lawrence is an inmate at the Cook County Jail.  *See* Am. Cplt., at ¶¶ 3, 8 (Dckt. No. 19).  He began suffering extreme dental pain around May 2018.  *Id.* at ¶ 9.  He had a cavity that was visible to the naked eye.  *Id.*

Lawrence began to submit grievances about his aching tooth.  He submitted the first grievance in November 2018.  *Id.* at ¶ 14.  He submitted four grievances in January 2019.  *Id.* He submitted another grievance in February 2019, and two more in March 2019.  *Id.*

Meanwhile, Lawrence formally requested medical treatment.  Under the jail's policy, inmates must provide health service requests to the dental clinic, so that the clinic can schedule treatment.  *Id.* at ¶ 11.  Lawrence alleges that he followed that policy.  *Id.* at ¶¶ 10, 13.  He submitted eight requests in February 2019, and three requests in March 2019.  *Id.* at ¶ 12.

Lawrence waited for treatment, and continued to suffer.  He experienced severe pain, which caused headaches.  *Id.* at ¶ 16.  He had problems chewing and was forced to chew on only one side of his mouth.  *Id.*  He had pus in his mouth, and when he breathed, the airflow caused more pain.  *Id.*

At some point, Lawrence had a dental appointment with Dr. Brenda Taylor, a dentist employed by Cook County.  *Id.* at ¶¶ 7, 17.  The complaint does not pin down when, exactly,

Taylor looked at his tooth, except to say that it took place "at some point after Plaintiff first began complaining of severe dental pain." *Id.* at ¶ 17.

According to the complaint, Taylor "did not treat Plaintiff's tooth." *Id.* The complaint alleges that Taylor "did not take any reasonable measures to treat Plaintiff's tooth or alleviate the significant dental pain he was experiencing," even though the cavity was visible. *Id.* at ¶ 18. Taylor "was aware of Plaintiff's untreated dental pain from his health service requests," and "had the ability to facilitate timely dental treatment for Plaintiff but failed to do so." *Id.* at ¶ 28.

After that exam, Lawrence continued to call attention to his aching tooth. He "continued to submit health service requests and grievances" seeking medical attention. *Id.* at ¶ 19. Lawrence told the jail about his pain. He "consistently complained of tooth pain with a pain level above level 9 on a scale of 1–10, 10 being the highest level on the pain scale." *Id.* at ¶ 20.

On March 12, 2019 (two days after his last grievance and health service request), Lawrence finally received treatment and much-needed relief. *Id.* at ¶¶ 12, 14, 21. A second dentist, Dr. Rhay Street, pulled the tooth. *Id.* at ¶ 21.

Lawrence contends that he should have received treatment sooner. Cook County policy requires a dentist to see an inmate within three business days if the inmate is experiencing pain rated 5 or more on a scale of 10. *Id.* at ¶ 22. Those requests are "urgent." *Id.* Lawrence contends, on "information and belief," that he submitted numerous requests complaining about pain in excess of 5 out of 10, but he didn't see a dentist within three days (except for, apparently, his appointment with Street). *Id.* at ¶ 23.

Lawrence pins the blame for the delay on the system for scheduling dental appointments. The dentists themselves don't book appointments. Instead, the jail has delegated the responsibility for scheduling appointments to each dental clinic. *Id.* at ¶ 25; *see also id.* at ¶ 11

("Pursuant to policy, all dental health service requests are to be provided to the dental clinic in order for treatment to be scheduled.").  The dentists do the exams, but not the scheduling of the exams.

Cook County has trained each dentist, including Defendant Taylor, to collaborate with dental assistants to schedule all "urgent" health service requests.  *Id.* at ¶ 26.  But the ultimate responsibility for scheduling decisions rests with the dental assistants.  The jail has "delegat[ed] scheduling responsibility to the dental assistants," and that delegation causes delays in treatment "for no medical reason."  *Id.* at ¶ 27.

Worse yet, Lawrence alleges that Sheriff Dart and Cook County know that inmates who submit urgent requests for dental treatment are not receiving care within three days.  *Id.* at ¶ 24.  According to the complaint, Sheriff Dart and Cook County have known since 2015 that Defendant Taylor "does not participate in the scheduling of patients in her dental clinic."  *Id.* at ¶ 30.  And Sheriff Dart and Cook County know that delegating scheduling responsibility to the dental assistants leads to delayed treatment.  *Id.* at ¶ 27.

In sum, Lawrence alleges that he suffered gratuitous pain because Defendant Taylor "does not participate in the scheduling of patients for treatment after the dental clinic receives" requests for treatment.  *Id.* at ¶ 29.  He alleges that Defendant Taylor "intentionally refus[ed] to participate in the scheduling of 'urgent' health service request form appointments, caus[ing] inmates, like Plaintiff, to suffer prolonged and gratuitous pain."  *Id.* at ¶ 31.

Lawrence filed suit, and later filed an amended complaint with two counts.  The first claim is a deliberate indifference claim under the Eighth and Fourteenth Amendments against Defendant Taylor (only).  Lawrence alleges that Taylor failed to conduct a reasonable exam, and intentionally failed to schedule urgent dental appointments.

4

The second claim is a deliberate indifference claim under the Eighth and Fourteenth Amendments against Sheriff Dart and Cook County. Lawrence claims that there are "systemic deficiencies" at the Cook County Jail, which lead to "constitutionally inadequate" dental care. *Id.* at ¶ 39. He points to the practice of "delegating scheduling decisions to dental assistants," which are a "barrier to timely care." *Id.* at ¶ 40. According to the complaint, Sheriff Dart and Cook County know that inmates routinely wait weeks to receive treatment for urgent dental needs, and know that they suffer gratuitous pain as a result. *Id.* at ¶¶ 41–42

Defendants moved to dismiss both counts. In the alternative, they moved for a more definite statement on the claim against the dentist (Count I). *See* Defs.' Mtn. to Dismiss (Dckt. No. 20).

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not the merits of the case. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a motion to dismiss, the Court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in the plaintiff's favor. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive, the complaint must give the defendant fair notice of the basis for the claim, and it must be facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When reviewing a motion to dismiss under Rule 12(b)(6), the court may consider "the complaint itself, documents attached to the complaint, documents that are critical to the

5

complaint and referred to in it, and information that is subject to proper judicial notice."

*Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

## Analysis

Defendants move for a more definite statement on Count I against Taylor, or, in the alternative, to dismiss. *See* Defs.' Mtn. to Dismiss, at 4–9 (Dckt. No. 20). They also move to dismiss Count II against Dart and Cook County with prejudice. *Id.* at 9–13.[1]

Before turning to the arguments, the Court will address two housekeeping matters.

First, Defendants seek a dismissal with prejudice because, in their view, the complaint does not include sufficient facts to support a claim. But a dismissal with prejudice is a dismissal on the merits. District courts typically allow at least one opportunity to file an amended complaint before dismissal with prejudice. *See O'Brien v. Village of Lincolnshire*, 955 F.3d 616, 628 (7th Cir. 2020). It is true that Lawrence already amended his complaint, but that filing came before the motion to dismiss. So, even if this Court were inclined to dismiss the claims, the Court likely would do so without prejudice, and give him a chance to fix any problems.

Second, Lawrence invokes the wrong constitutional provision. He alleges deliberate indifference by all Defendants. Deliberate indifference to a prisoner's medical needs is the standard for a violation of the Eighth Amendment. *See Miranda v. County of Lake*, 900 F.3d 335, 350 (7th Cir. 2018).

The Eighth Amendment addresses punishment. *See* Const. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual *punishments* inflicted.") (emphasis added). But the state cannot punish Lawrence because he's a pretrial detainee. He

---

[1] Defendants also moved to dismiss the claims for punitive damages against Dart. *See* Defs.' Mtn. to Dismiss, at 14 (Dckt. No. 20). Lawrence agreed to dismiss those claims, so the Court need not address those arguments. *See* Pl.'s Resp. to Defs.' Mtn. to Dismiss, at 15 (Dckt. No. 24).

hasn't been convicted, so there's nothing to punish him *for*. "Pretrial detainees stand in a different position: they have not been convicted of anything, and they are still entitled to the constitutional presumption of innocence. Thus, the punishment model is inappropriate for them." *Miranda*, 900 F.3d at 350. So, the Eighth Amendment doesn't apply to Lawrence.

Instead, the Seventh Circuit has held that the Fourteenth Amendment applies to pretrial detainees. *Id.* at 352–53. "[M]edical-care claims brought by pretrial detainees under the Fourteenth Amendment are subject only to the objective unreasonableness inquiry identified in *Kingsley* [*v. Hendrickson*, 576 U.S. 389 (2015)]." *Id.* at 352.

The objective unreasonableness test asks two questions. The first question "asks whether the medical defendants acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of [the plaintiff's] case. Negligence or gross negligence does not meet this standard." *Williams v. Ortiz*, 937 F.3d 936, 942 (7th Cir. 2019) (cleaned up). If the answer is no, then there is no claim.

If the answer is yes, then the Court must proceed to question two. The second question is "whether the challenged conduct was objectively reasonable." *Id.* (cleaned up).

With the correct standard now in hand, the Court turns to the Defendants' motion.

## I. The Claim against Defendant Taylor (Count I)

The first claim is against Defendant Taylor, the dentist. Lawrence alleges that Taylor provided inadequate medical care by performing a poor examination, and by failing to ensure that he received prompt medical treatment for his urgent dental needs. *See* Am. Cplt., at ¶¶ 33–34 (Dckt. No. 19).

Defendants argue that his complaint does not allege enough specific facts for Taylor to adequately respond. The complaint offers only a date range, without pinning down when,

exactly, the examination by Taylor took place.  So they ask for a more definite statement or dismissal.  *See* Defs.' Mtn. to Dismiss, at 4–9 (Dckt. No. 20).  Otherwise, they "cannot obtain the appropriate documents needed" to respond to the complaint.  *Id.* at 5.

Along the way, Defendants contend that the complaint "fails to state even one day in which he saw Dr. Taylor *or if he ever saw Dr. Taylor for treatment.*"  *Id.* at 5 (emphasis added).  That's an overstatement.  Paragraph 17 squarely alleges that "Defendant Taylor examined Plaintiff at some point."  *See* Am. Cplt., at ¶ 17 (Dckt. No. 19).  It's true that Lawrence does not provide the date of the exam.  But it's equally true that the complaint does allege that there was an exam.

To survive a motion to dismiss, Lawrence needed to allege facts sufficient to state a plausible claim that Taylor "purposefully, knowingly, or perhaps even recklessly" (1) conducted an examination that was objectively unreasonable and/or (2) failed to schedule appointments for his urgent requests.  *Williams*, 937 F.3d at 942 (cleaned up).

The complaint does not offer many details about the examination by Taylor.  He alleges that Taylor examined him, and that he had a visible cavity.  *See* Am. Cplt., at ¶ 17 (Dckt. No. 19).  He alleges that he complained of "severe pain."  *Id.*  He alleges that Taylor "did not take any reasonable measures" to treat the tooth or alleviate his pain.  *Id.* at ¶ 18.

Maybe the most important allegation is the fact that the tooth stayed put.  The tooth stayed in his mouth, and was extracted later by another dentist.  *Id.* at ¶ 21.

Those allegations are enough to give notice of a claim.  The purpose of a complaint is "to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'"  *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*,

550 U.S. at 555). Lawrence provided sufficient notice here. It's true that the complaint does not provide all of the nitty-gritty details, but Taylor can seek them during discovery.

The same is true when it comes to the allegations about the delay. Lawrence alleges that at "all relevant times, Defendant Taylor was aware of [his] untreated dental pain from his health service requests," and "had the ability to facilitate timely dental treatment for [him] but failed to do so." *See* Am. Cplt., at ¶ 28 (Dckt. No. 19). He also alleges that Taylor "does not participate in the scheduling of patients for treatment after the dental clinic receives health service request forms seeking treatment," despite receiving training "to collaborate with the dental assistant to schedule" urgent requests "within 3 business days." *Id.* at ¶¶ 26, 29.

An undue delay in treatment can give rise to a constitutional violation. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 865–66 (7th Cir. 2012) ("Even though this delay did not exacerbate [the plaintiff's] injury, he experienced prolonged, unnecessary pain as a result of a readily treatable condition. We have previously upheld similar claims for relief.") (citation omitted) (collecting cases). But "[d]elay is not a factor that is either always, or never, significant. Instead, the length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010).

True, the complaint does not pin down the chronology. It is up in the air when Taylor first learned about Lawrence's tooth, and when Taylor first took a look in his mouth. Maybe the delay was a matter of days. Or maybe it was weeks, or months. For now, the key is that Taylor "was aware of Plaintiff's untreated dental pain," and yet did nothing. *See* Am. Cplt., at ¶ 28 (Dckt. No. 19).

Depending on the facts, Lawrence may or may not have a viable claim down the road. But as things stand, the complaint offers a sufficient outline of the claim. The parties can fill in the details later. That's what discovery is for.

The motion to dismiss or, in the alternative, for a more definite statement on Count I is hereby denied.

## II. The Claim against Sheriff Dart and Cook County (Count II)

The second claim is against Sheriff Dart (in his official capacity)[2] and Cook County. Lawrence alleges that there are systemic issues that prevent timely medical care for urgent dental problems. *See* Am. Cplt., at ¶¶ 39 (Dckt. No. 19). Lawrence alleges that Defendants knew about the scheduling issues, but chose to do nothing. *Id.* at ¶¶ 40–44.

Defendants respond that (1) Dart is not responsible for medical care at the Cook County Jail, and (2) Lawrence failed to sufficiently plead a *Monell* claim against either Dart (if he is responsible) or Cook County. *See* Defs.' Mtn. to Dismiss, at 9–14 (Dckt. No. 20). The Court first determines if Dart is a proper defendant, and then considers whether the complaint alleges a *Monell* claim.

### A. Defendant Dart

The first argument is about whether Sheriff Dart is responsible for the medical care of inmates. *Id.* at 9–11. Defendants argue that "Sheriff Dart is not in charge of or responsible for the medical or dental care of [Cook County Department of Corrections]." *Id.* at 10. Instead,

---

[2] "[T]he real party in interest in an official-capacity suit is the governmental entity and not the named official." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). So, the claims against Sheriff Dart are really against the Cook County Sheriff's Office. That is, "[t]he County is not responsible for policies set by the Sheriff's Office and carried out by its deputies because in Illinois a sheriff is an independently elected county officer, not an employee of the county that he or she serves, and the deputies are employees of the Sheriff's Office." *Bertha v. Hain*, 787 F. App'x 334, 339 (7th Cir. 2019). So, *Cook County* is not liable "for the acts of *sheriff's deputies*." *Id.* (emphasis added). But Cook County "remains a proper defendant because state law requires it to pay a judgment entered against a sheriff in his official capacity." *Id.*

Cook County (through Cermak Health Services) holds that responsibility. *Id.* Additionally, Defendants argue that Dart – as a non-medical professional – cannot be expected to second-guess the expertise of a medical professional, like Defendant Taylor. *Id.*

The Court rejects the notion that Sheriff Dart is *per se* unresponsible for the health and wellbeing of inmates. As several courts in this District have noted, "[i]t is 'the responsibility of the Sheriff, as the official who controls and supervises Cook County Jail . . . to ensure that the medical needs of inmates are adequately met, regardless of whether, as a practical matter, medical tasks were actually carried out by the Sheriff or delegated to some other agency or entity. Thus, the fact that the County actually provides the dental care does not absolve Dart of his responsibility for ensuring that the care is adequate.'" *Evans v. Dart*, 2015 WL 5675012, at *3 (N.D. Ill. 2015) (quoting *Bramlett v. Dart*, 2015 WL 4148711, at *2 (N.D. Ill. 2015)) (other citation omitted); *see also Johnson v. Dart*, 2016 WL 1392324, at *6 (N.D. Ill. 2016); *see also King v. Kramer*, 680 F.3d 1013, 1020 (7th Cir. 2012) ("The County cannot shield itself from § 1983 liability by contracting out its duty to provide medical services."). Sheriff Dart must care for the incarcerated.

Second, as the Court reads it, the complaint does not allege a claim against Sheriff Dart for the decision-making of Taylor during the exam in question. The claim is not about second-guessing the dentistry of the dentist. The claim against Sheriff Dart is about the practice of scheduling appointments, including the policy to see a dentist for urgent needs within three days. *See* Am. Cplt., at ¶ 22 (Dckt. No. 19). The complaint alleges that Dart knew that the jail was not following this policy. *Id.* at ¶¶ 23–24. So the claim against the Sheriff is not about a particular dental exam, but is about the policy and practice of scheduling exams more generally.

Lawrence adequately alleges that Dart oversaw the jail and knew about the scheduling issues. And he is correct that Sheriff Dart bears responsibility for inmate health and safety. So the motion to dismiss Sheriff Dart is denied.

### B. *Monell* Liability

Next, Defendants argue that the complaint failed to plead a *Monell* claim against Sheriff Dart or Cook County. *See* Defs.' Mtn. to Dismiss, at 11–14 (Dckt. No. 20).

Lawrence sued Sheriff Dart in his official capacity (only), along with Cook County, so his claims must meet the requirements of *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). "Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, 'the entity's policy or custom must have played a part in the violation of federal law.'" *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (cleaned up) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). "The liability of the Sheriff's Department and of the County is derivative of [Dart's] official-capacity liability, and the official-capacity liability is subject to [the] holding in *Monell* . . . ." *Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007) (citing *Monell*, 436 U.S. at 658).

To state a claim against a local government, a plaintiff must allege liability through one of three routes:

> (1) through an express policy that, when enforced, causes a constitutional deprivation; (2) through a "wide-spread practice" that although not authorized by written law and express policy, is so permanent and well-settled as to constitute a "custom or usage" with the force of law; or (3) through an allegation that the constitutional injury was caused by a person with "final decision policymaking authority."

*See Johnson v. Cook County*, 526 F. App'x. 692, 695 (7th Cir. 2013) (quoting *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005)); *see also Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010).

Lawrence also must allege causation, and that the policy or custom was "the moving force" behind the constitutional violation. *See Estate of Sims ex rel. Sims*, 506 F.3d at 514. "In order to state a § 1983 claim against a municipality, the complaint must allege that an official policy or custom not only caused the constitutional violation, but was 'the moving force' behind it." *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)).

"The central question is always whether an official policy, however expressed . . . caused the constitutional deprivation. It does not matter if the policy was duly enacted or written down, nor does it matter if the policy counsels aggressive intervention into a particular matter or a hands-off approach." *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017).

Lawrence's complaint is about the delay in dental treatment caused by the delegation of the dental scheduling. The jail has a policy of giving inmates a dental appointment within three business days if they complain of pain that is greater than 5 out of 10. *See* Am. Cplt., at ¶ 22 (Dckt. No. 19). Lawrence doesn't complain about *that* policy, by itself. By all appearances, he *likes* that policy.

Instead, Lawrence complains about how the jail implements the policy. The jail has a policy of delegating the scheduling – meaning the actual booking of the appointments – to dental assistants. *Id.* at ¶ 25 ("Cook County, pursuant to policy, delegates responsibility to each dental clinic to schedule patients for care."); *id.* at ¶ 26 ("Defendant Cook County trained each dentist, including Dr. Taylor, to collaborate with the dental assistant to schedule all 'urgent' health service request forms to be evaluated by the dentist within 3 business days.").

So, the jail has a policy about giving inmates a dental visit within three business days, if they suffer from significant pain. And when carrying out that policy, it has a subsidiary policy: dental assistants must book the appointment.

13

Lawrence alleges that he "consistently complained of tooth pain with a pain level above level 9" on his forms. *Id.* at ¶ 20. And he alleges that he submitted several of those forms. *Id.* at ¶¶ 12–14. Once he submitted that form, it was up to the dental assistant to schedule an appointment so that he saw a dentist within three business days. But instead of seeing a dentist right away, Lawrence had to wait several weeks. *Id.* at ¶ 21.

Lawrence blames the delay on that secondary policy of delegating scheduling decisions to dental assistants. In response, Defendants argue that the practice of using dental assistants to book appointments was not the "moving force" behind the alleged violations. *See* Defs.' Mtn. to Dismiss, at 11–14 (Dckt. No. 46).

"The critical question under *Monell*, reaffirmed in *Los Angeles County v. Humphries* . . . is whether a municipal (or corporate) policy or custom gave rise to the harm (that is, caused it), or if instead the harm resulted from the acts of the entity's agents." *Glisson*, 849 F.3d at 379. "If the mere exercise of discretion by an employee could give rise to a constitutional violation, the result would be indistinguishable from *respondeat superior* liability." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988). "When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality." *Id.* at 127.

A policy of delegating the scheduling of appointments, in and of itself, cannot be the moving force behind Lawrence's injury. *Every* policy must be applied by employees. Entities delegate everything to human beings – *someone* has to do it. The decision to assign a specific task to certain people can't give rise to liability because tasks don't perform themselves.

The jail had to delegate the scheduling of the appointments to *someone*. Merely delegating a facially constitutional policy does not give rise to *Monell* liability. *See Holmes v.*

14

*Sheahan*, 930 F.2d 1196, 1201–02 (7th Cir. 1991) ("[W]ithout more evidence pointing to deficiencies in these procedures, [the plaintiff's] story suggests a problem with personnel and the implementation of policy, . . . but not a problem with County policy itself."); *see also Thomas v. DuBois*, 2020 WL 2092426, at *4 (S.D.N.Y. 2020) ("In other words, any violation of Plaintiff's constitutional rights was caused by the *failure* to follow a policy, not the policy itself. By definition, such allegations fail to state a claim under *Monell*.") (emphasis in original); *Steele v. Rowles*, 2009 WL 2905903, at *9 (E.D. Tex. 2009) ("Assuming Mr. Steele's constitutional rights were violated, it was the individual employees who violated his rights when they did not follow the policies and procedures that were in place. Defendant Rowles, in his official capacity, and Jasper County cannot be held liable for the employees' actions in this case.") (citation omitted), *aff'd*, 389 F. App'x 347 (5th Cir. 2010).

Lawrence's issue is not with delegation itself. He complains that the jail does not follow its own policy of giving inmates a dental visit within three days. So, even though he followed all the rules to get a dentist appointment in three days, the jail isn't following its own policy.

In many instances, a municipality is not liable under *Monell* if the employee fails to follow the policy. *See Bradich ex rel. Estate of Bradich v. City of Chicago*, 413 F.3d 688, 680 (7th Cir. 2005) ("None of Chicago's policies is constitutionally inadequate; indeed, the Estate does not take issue with any of them. Its argument, rather, is that Chicago did not ensure that all of its employees followed all of its policies all of the time. That theory of liability is incompatible with *Monell*."); *Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 532 n.3 (7th Cir. 2000) (finding that simply failing to follow certain policies, without evidence of personnel regularly ignoring established policies, did not give rise to *Monell* liability); *Auriemma v. Rice*, 957 F.2d 397, 400 (7th Cir. 1992) ("Liability for unauthorized acts is personal; to hold

the municipality liable, *Monell* tells us, the agent's action must implement rather than frustrate the government's policy.").

If employees aren't following the policy, then the policy itself isn't causing the injury. Instead, it's the employee not following the policy that causes the injury. *Monell* requires that the County itself – not its employees – be behind the violation. *See Vodak v. City of Chicago*, 639 F.3d 738, 747 (7th Cir. 2011) ("A person who wants to impose liability on a municipality for a constitutional tort must show that the tort was committed (that is, authorized or directed) at the policymaking level of government . . . ."). Generally, if the municipality has a lawful policy that the employees aren't following, that is not on the municipality (without more).

But the situation changes if the municipality has knowledge that the employees in question are repeatedly engaging in conduct that violates constitutional rights. "[M]unicipal liability can also be demonstrated indirectly 'by showing a series of bad acts and inviting the court to infer from them that the policymaking level of government was bound to have noticed what was going on and by failing to do anything must have encouraged or at least condoned, thus in either event adopting, the misconduct of subordinate officers.'" *See Woodward v. Coor. Med. Servs. of Illinois, Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (quoting *Estate of Novack*, 226 F.3d at 531). This indirect method is the second route of alleging *Monell* liability – a "wide-spread practice." Thus, when personnel "regularly" or "routinely" ignore facially constitutional policies, municipalities can be liable. *See e.g.*, *id.*; *Estate of Novack*, 226 F.3d at 532 n.3 ("[T]he 'bad acts' from which municipal liability may be indirectly inferred must be a 'pattern of conduct or a series of acts violative of constitutional rights.'") (citation omitted); *Bradich*, 413 F.3d at 690 ("The Estate does not argue that the City *systematically* fails to enforce its written

16

policies and instead maintains informal policies that violate the Constitution.") (emphasis in original).

Lawrence alleges that "there have been systemic deficiencies with the scheduling of inmates for dental appointments in Cook County Jail that render dental treatment constitutionally inadequate for all inmates with serious dental ailments." *See* Am. Cplt., at ¶ 39 (Dckt. No. 19). He claims that Defendants "have been on notice" of these deficiencies, too. *Id.* at ¶ 40. And "Defendants Dart and Cook County know inmates suffer unnecessary and gratuitous pain because of the systemic deficiencies with scheduling of patients who submit urgent dental health service requests, including but not limited to delegating scheduling to dental assistants." *Id.* at ¶ 42.

Lawrence admits that he likes the facially constitutional policy, but he also alleges that Defendants knew about systemic, repeated deficiencies in scheduling. So Lawrence identified, indirectly, Defendants' knowledge of systemic issues with policy compliance (a "wide-spread practice") and their repeated inaction (the moving force behind his injury).

This indirect method cannot become a backdoor way to impose *respondeat superior* liability. Holding the municipality liable for its agent's failure to follow directions would be *respondeat superior* liability. But the requirement that the municipality must *know* of the systemic issues prevents the backdoor from opening. *Cf. Flores v. City of South Bend*, 997 F.3d 725, 731 (7th Cir. 2021) ("What separates [failure to train] liability from traditional *respondeat superior* liability is a known pattern of tortious conduct demonstrating the need for additional training, 'rather than a one-time negligen[ce].'") (quoting *Bd. of Cnty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 407–08 (1997)).

17

Defendants' motion to dismiss Lawrence's claim for his delayed appointments based on the policy of delegation is denied. The claim can go forward to the extent that Lawrence is alleging that Defendants knew about a widespread practice of providing constitutionally inadequate dental care by delaying appointments. Whether Lawrence can prove that claim is a question for a later day.

## Conclusion

For the foregoing reasons, Defendants' motion is denied.

Date:   January 25, 2022

_____

Steven C. Seeger
United States District Judge

18